**SO ORDERED: July 08, 2011.**



_____
Anthony J. Metz III
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE:                                          )
                                                )
TORRAN BROWN                        )          CASE NO. 10-6443-AJM-13
                                                )
        Debtor                              )

### ORDER DENYING DEBTOR'S AMENDED MOTION
### TO MODIFY PLAN POST CONFIRMATION

This matter came before the Court for hearing on June 16, 2011 upon the

Debtor's amended motion to modify her confirmed chapter 13 plan filed on March 15,

2011 to which creditor Indiana Finance Company ("IFC") objected.  The Debtor

appeared in person and by her counsel, Andrew Eberly; IFC appeared by its counsel,

Robert W. Burt, Jr.

#### *Background*

IFC holds a purchase money security interest in the Debtor's 2002 Ford Focus

(the "Vehicle").  The Debtor purchased the Vehicle on May 31, 2008 from Oak Motors

1

("Oak") and Oak subsequently assigned its interest in the Vehicle to IFC.   The Debtor

filed her chapter 13 case on April 30, 2010 (the "Petition Date").  The Debtor's initial

chapter 13 plan valued IFC's secured claim at $1,300 and proposed to pay the claim

with 4.25% interest.  IFC objected to the plan, asserting that its claim was a 910 claim [1]

and that the balance due on the contract was $6,268.11.  The Debtor's second

amended plan valued IFC's secured claim at $6,268.11, payable at 4.25% interest.  The

Debtor's second amended plan was confirmed on August 9, 2010 (the "Confirmed

Plan").

On January 11, 2011, barely six months after the plan was confirmed, the Vehicle

was taken in for major repairs.  Before learning of the cost of repairs, the Debtor decided

to surrender the Vehicle, thus reducing to unsecured status the balance of IFC's secured

claim.  Though she claimed she called the repair shop to find out the cost of the repairs,

the evidence at trial indicated that the Debtor filed her first motion to modify her plan the

same day she took the Vehicle in for repairs.  The Debtor amended her motion to modify

on March 15, 2011.  The proposed "plan base" to be paid under the modified plan was

$20,240, compared to $28,025.00 under the Confirmed Plan, because the Debtor

proposed a reduction from a $475 monthly payment to a $315 monthly payment for the

last 51 months of the plan.  The motion was silent as to any change in the Debtor's

---

[1] A "910 claim" refers to a claim secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor that was incurred within the 910-day period preceding the date of filing of the bankruptcy petition.  Under the "hanging paragraph" which follows §1325(a)(9), a 910 claim must be paid in full, as the bifurcation provisions of §506 do not apply to such claims.  Since the Debtor here purchased the Vehicle within 910 days of the filing of her bankruptcy, and since IFC held a purchase money security interest in the vehicle, IFC holds a "910 claim".  Thus, the Debtor was obligated to pay IFC's claim in full.

financial circumstances. [2]  IFC objected to the proposed modification.

### *Discussion*

A chapter 13 plan must meet the criteria set forth in §1325 for it to be confirmed.

With respect to secured claims, a plan can be confirmed only if (1) the secured creditor

agrees with the treatment of its claim under the plan; (2) the secured creditor retains its

lien in the collateral until its secured claim (which must equal the present value of the

collateral, paid over time) is paid in full; or (3) the debtor surrenders the collateral to the

secured creditor.  11 U.S.C. §1325(a)(5); See, *Bank One, N.A. v. Leuellen*, 322 B.R.

648, 658 (S. D. Ind. 2005).  A confirmed chapter 13 plan binds the debtor and creditors

"whether or not the claim of such creditor is provided for in the plan, and whether or not

such creditor has objected to, has accepted or has rejected the plan",  11 U.S.C.

§1327(a).

### *Modification of a Confirmed Plan under §1329*

Despite the seemingly *res judicata* effect of §1327(a), a confirmed plan can

nonetheless be modified by a debtor, a trustee or an unsecured creditor under §1329

because "Congress did not intend the common law doctrine of res judicata to apply to

§1329 modifications".  *In re Witkowski*, 16 F.3d 739, 745 (7th Cir. 1994).  Neither §1329

nor §1327 require a showing of unanticipated and substantial change in circumstances –

or any change in circumstances for that matter  – as a *threshold* requirement for

---

[2] Shortly before the Debtor filed her amended motion to modify the Confirmed Plan, the Debtor, on March 1, 2011, filed amended Schedules I and J.  The amended schedules revealed that the Debtor's place of employment had changed since the original Schedules I and J were filed on the Petition Date and that the Debtor was earning less at her new job resulting in a $162.48 decrease in monthly income. However, the Debtor's amended Schedule J indicated that the Debtor's monthly expenses had likewise decreased by $149.00.  This corresponding reduction in expenses resulted only in a negligible $13.48 reduction in monthly *net* income.

modification.  *Id*. at 746.  However, approval of the modification is within the Court's

discretion, and any changed circumstances or lack thereof can be considered in the

exercise of that discretion.  *Powers v. Savage (In re Powers)*, 202 B.R. 618, 622 (B.A.P.

9th Cir. 1996); *In re Klus*, 173 B.R. 51, 59 (Bankr. D. Conn. 1994) ("Resort to the

legislative history, which suggests that §1329 was designed to accommodate

unanticipated change in circumstances substantially affecting a debtor's ability to pay, is

appropriate to provide guidance to the court in its exercise of discretion").

### *§1329 and Surrender of Collateral*

Despite a confirmed plan having no *res judicata* affect, and no requirement of a

threshold showing of changed circumstances, Section 1329 is not limitless.  A plan may

be modified post confirmation pursuant to §1329(a) only under any of <u>four</u> specific

circumstances: (1) to increase or reduce the amount of payments on claims of a

particular class; (2) to extend or reduce the time for such payments; (3) to alter the

amount of distribution to a creditor whose claim is provided for in the plan to the extent

necessary to take account of any payment of such claim other than under the plan or (4)

to reduce the amounts to be paid under the plan by the actual amount expended by the

debtor to purchase health insurance for the debtor or the debtor's dependents. [3]  Certain

criteria required of initial plan confirmation likewise is required in approving a

postconfirmation modification. [4]  The four specific circumstances set forth in §1329

---

[3] This fourth option was added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

[4] Pursuant to §1329(b)(1), the modified plan must meet the requirements set forth in §1322(a), §1322(b), §1323(c) and §1325(a).

involve the readjustment of either the amount of payments or the timing in which payments are to be made.  Thus, this section implicitly suggests that *some* change in financial circumstances or ability to pay must have occurred since confirmation, for why else would a debtor, trustee or unsecured creditor be asking to readjust the amount or timing of payments?

A fair number of courts have weighed in on whether the surrender of a vehicle for which the debtor originally agreed to pay under the confirmed plan falls under any of the specific circumstances of §1329(a).  One line of cases holds that surrender of a vehicle with the resulting reduction of the creditor's claim to an unsecured claim is not merely a reduction of the amount of payments on the claim under §1329(a))(1), but is actually a *reclassification of the claim* entirely.  Since nothing in §1329 provides for the reclassification of a claim, modification under such circumstances, as a matter of law,  is not permitted.  *In re Nolan*, 232 F.3d 528, 532 (6th Cir. 2000). See also, *In re Palmer*, 419 B.R. 162, 168 (Bankr. N. D. N. Y. 2009) (modification under §1329 not allowed but claim may be reconsidered "for cause" under §502(j), finding, however, that no cause existed to reconsider claim).

This district follows a contrary line of cases and allows modification under such circumstances pursuant to §1329(a)(1) which provides that a plan can be modified post confirmation in order to "increase or reduce the amount of payments on claims of a particular class".  Noting that each secured creditor constitutes a "class", the reduction of a secured claim to an unsecured one by surrendering the collateral falls squarely under §1329(a)(1) because the creditor's secured claim is reduced to zero and thus modification under such circumstances is permissible.  *Leuellen*, 322 B.R. at 657; *In re*

5

*Lane*, 374 B.R. 830, 838 (Bankr. D. Kan. 2007) ("*Nolan's* construction of §1329(a)(1) is

unduly narrow"); *In re Knappen*, 281 B.R. 714, 717 (Bankr. D. N. M. 2002) ("[t]he

language of §1329(a)(1) of the Code explicitly allows the debtor to 'reduce the amount of

payments on claims of a particular class...'.  Since each secured claim is generally

treated as a separate class, reducing to nothing the amount of payments on Ford's

secured claim fits within the language of the statute").  So, following *Leuellen's* lead, the

Court finds that modification by surrender of collateral falls under §1329(a)(1).  The

question is whether the modification here, in the Court's discretion, should be approved.

### Good Faith under §1325(a)(3)

IFC argues that §1329(b)(1) requires the modification to comply with the

provisions of §1325(a), one of which is that the modification be proposed in good faith

under §1325(a)(3).  IFC contends the modification has not been proposed in good faith

because the Vehicle was surrendered in substandard condition due to the Debtor's

failure to maintain it.  To that end, there was substantial evidence, both documentary

and testimonial, that focused on the Debtor's Vehicle maintenance record.  DeWayne

Franz, IFC's witness and Oak's director of service operations, testified that when the

Vehicle was brought in for repairs, the engine was blown and full of sludge.  The oil had

a viscosity factor of 7.5 when the proper viscosity factor is 10 or above.  In his opinion,

the sludge was attributable to lack of frequent oil changes.  Franz testified that the factor

that dictated the frequency of oil changes was mileage, not months.   When the Debtor

purchased the Vehicle on May 31, 2008, its mileage was 109,063.  Between the date of

purchase and January 11, 2011, the Debtor had driven 32,323 miles as the Vehicle's

mileage on January 11th was 141,386.  There was documentary evidence at the hearing

that the Debtor took the Vehicle in for oil changes five (5) times between May 31, 2008

and January 11, 2011.  There appears to be a six month gap between the oil changes

performed on June 24, 2009 and January 2, 2010.  The Vehicle had been driven a little

over 8,300 miles in that interval.  But, the Debtor's testimony was that she took it

"someplace" for an oil change between those dates and that she also received an oil

change from Oak a couple of months after she purchased the Vehicle. [5]   Given this

evidence, the Court cannot say that the engine damage was not the result of the

Debtor's actions.

However, even if this were not the case, this does not mean that the modification

was proposed in "good faith" under §1325(a)(3).  Whether a modification is proposed in

"good faith" depends on the totality of the circumstances, whether the modification is

"fundamentally" fair, and whether the debtor is trying to pay the creditors to the

"reasonable limit of his ability " or is, instead, trying to "thwart them".  *Leuellen*, 322 B.R.

at 661 (citations omitted).  Thus, approval of the modification is not solely dependent

upon the extent to which the Debtor maintained the Vehicle, but whether the Debtor's

proposed modification is fundamentally fair and whether the Debtor is paying her

creditors to the "reasonable limit" of her ability.

In *Leuellen*, the Debtors' modification by surrender was found to have been

proposed in good faith in part because it "the debtors became unable to make payments

under their original plan on two vehicles an their modest home.  Permitting them to avoid

_____

[5] If the Debtor only changed the oil a total of six (6) times while she had the Vehicle, (or seven (7)
times, according to her testimony that she in addition took the Vehicle to Oak in August, 2008 for the first
oil change for which there was no receipt), she did not change the oil every 3,000 miles.  No fewer than
ten (10) oil changes would have been required considering that the Vehicle had been driven 32, 323 miles.

chapter 7 liquidation by allowing them to surrender one vehicle to the secured creditor is consistent with both the statutory language and the broader policies of bankruptcy law". *Id*. at 662. No such justification exists here. Nothing in the record suggests that the Debtor is unable to maintain her current chapter 13 payments under the Confirmed Plan. Nor does the Debtor contend that she will need to give something up she is now paying for under the Confirmed Plan if the modification is not approved. The simple reason for the modification is that collateral the Debtor chose to retain at confirmation is no longer worth much and she doesn't want to pay for it. The Debtor has shown no proof that she no longer has the ability to make the payments required under the Confirmed Plan. The Court cannot conclude that the Debtor is trying to pay her creditors to the "reasonable limit" of her ability. Thus, the modification fails to meet the "good faith" requirement of §1325(a)(3).

### Change in Financial Circumstances

IFC cites the *Nolan* line of cases and argues that surrender of the Vehicle and reclassification of its claim as unsecured is not among the options set forth in §1329. As the Court has noted, this district by way of the *Leuellen* case allows a §1329 modification under such circumstances. However, cases that have allowed modification by surrender under §1329 have done so on the basis that the debtor has experienced a change in *financial* circumstances. Indeed, one of the debtors in *Leuellen* lost her job within six months of plan confirmation, making it impossible for the debtors to pay on two vehicles and their home as provided for under their confirmed plan. Thus, they proposed to surrender one of the vehicles to reduce the amount of their plan payments.

8

*Leuellen*, 322 B.R. at 651.  Judge Hamilton even suggested in *Leuellen* that a change in financial circumstances would be a major factor in the Court exercising its discretion on whether to allow such a modification.  ("...modification allows Chapter 13 debtors *who experience a dramatic change in their income*, and who act in good faith and with the bankruptcy court's approval, to surrender collateral to the secured creditor...."). (italics added).  *Id* at 656.  See also, *In re Rodriguez*, 430 B.R. 694 (Bankr. M. D. Fla. 2010) (debtors suffered decrease in income and could no longer afford to maintain two vehicles); *In re Boykin*, 428 B.R. 662 (Bankr. D. S. C. 2009) (unanticipated increase in debtor's living expenses); *In re Sellers,* 409 B.R. 820 (Bankr. W. D. La. 2009) (increased medical expenses); *In re Hernandez*, 282 B.R. 200 (Bankr. S. D. Tex. 2002) (surrender of vehicle needed to allow debtors to make payments sufficient to keep family home);  *In re Townley*, 256 B.R. 697 (Bankr. D. N. J. 2000) (debtor-wife lost her job).

Here, both the Debtors' original and amended motion to modify are silent with respect to any changes in the Debtor's *financial* situation.  The scant evidence presented at trial alluded to the fact that the Debtor was still working two jobs as of December, 2010 but that the hours from her second job were cut in January, 2011.  There was no evidence of the amount by which the Debtor's income decreased as a result of her reduced hours.  Indeed, the Debtor's amended Schedules I and J indicated only a $13.48 reduction monthly net income.

Essentially, the Debtor seeks to modify her Confirmed Plan because the Debtor deems the necessary repairs to be too expensive and the Debtor does not want to pay for them.  However, the Debtor has not alleged in her motions to modify or in her

testimony that she will be unable to continue her chapter 13 payments to the trustee and complete her plan if this modification is not approved.  The Court finds that there is simply not enough evidence in the record of changed financial circumstances for it to approve the modification.

Despite no change in *financial* circumstances, courts nonetheless have allowed debtors to surrender inoperable vehicles and treat any deficiency as unsecured in cases where the secured creditor had obtained relief from stay postconfirmation to repossess the collateral.  See, *In re Davis*, 404 B.R. 183, 192-196 (Bankr. S. D. Tex. 2009)(creditor repossessed vehicle from repair shop) and *In re Ross*, 373 B.R. 656, 662 (Bankr. W. D. Mo. 2007) (creditor repossessed and foreclosed on its collateral after change in debtor's income prompted default in payments).  Here, IFC has taken no such action.

### *Risk of Loss*

IFC also argues that the risk of loss should be borne by the Debtor, not IFC.  Indeed, this argument figures prominently in the *Nolan* line of cases that prohibit the surrender of collateral option under §1329.  See, *In re Meeks*, 237 B.R. 856, 861-862 (Bankr. M. D. Fla. 1999) ("A debtor who decides to retain collateral at a confirmation hearing is entitled to any later appreciation in value but also must suffer any resulting deprecation or loss"); *In re Coleman*, 231 B.R. 397, 400 (Bankr. S. D. Ga. 1999) ("A secured creditor cannot seek to (re)classify its claim in the event that collateral appreciated, rather than depreciated, and to allow a debtor to revalue or reclassify the claim when the collateral has depreciated is inequitable").  *Leuellen* countered such an argument by noting that a secured creditor may object to a plan that does not propose a

stream of payments sufficient in timing and amount to at least equal the rate of depreciation of the collateral in which it holds an interest.  As long as the rate of collateral depreciation is reflected in the payments to be received under the confirmed plan, a post confirmation modification will not harm the secured creditor because the amounts already received from the plan combined with the amount to be realized upon liquidation of the collateral should equal the amount of the secured creditor's allowed secured claim and should make the secured creditor whole.  *Leuellen*, 322 B.R. at 659; *Townley*, 256 B.R. at 699-700.

IFC asserted its right as a 910 claimant and objected to the Debtor's initial chapter 13 plan which valued the Vehicle at $1,300.  As a result of that objection and because IFC's claim, *by statute*, entitles it to fully secured status, the Confirmed Plan valued the Vehicle at $6,268.11 – the full amount due on the contract.   Had the Vehicle incurred only normal wear and tear between confirmation of the plan and the Debtor's motion to modify the Confirmed Plan, perhaps IFC would have been made whole, given the amount received upon liquidation of the Vehicle and the amounts already paid to it under the Confirmed Plan.  Instead, IFC is far from being made whole because the Vehicle is inoperable and its liquidation value is negligible.  Furthermore, the Debtor was only six (6) months along under the Confirmed Plan and, with monthly payments of $133.22, IFC could not have been paid more that $1,000 as of the date the Debtor filed her first motion to modify.  As such, IFC would bear the entire risk of loss if the modification here were approved.

Congress, in adding the "hanging paragraph" which follows §1325(a)(9), has prohibited "cram down" of a purchase money security interest in a vehicle purchased

within 910 days of the bankruptcy filing.  Placing the entire risk of loss on IFC and

allowing modification here would be inconsistent with Congress' intent to provide

protection of full collateral value to such creditors.  The Debtor has made absolutely no

showing that she can no longer afford the payments required under the Confirmed Plan.

The Debtor has not demonstrated that she will be prompted to convert her case to a

chapter 7 case because she will be unable to complete her chapter 13 plan absent the

modification.  For these reasons, the Court finds that the Debtor's motion must be

DENIED.


# # #

Distribution:
Andrew Eberly, Attorney for the Debtor
Robert Burt, Attorney for IFC
Case Trustee